This is an appeal from an order approving the final account of an executor and a decree of distribution in the estate of. Wesley Asbury, deceased. Wesley Asbury was a fullblood enrolled member of the Creek Tribe of Indians. He died a resident of Hughes county September 12, 1937, and his will was admitted to probate without objections October 13, 1937. On April 25, 1939, final account and petition for distribution of assets of the estate was filed. After notice, and on May 24, 1939, Annie Asbury sought to contest the will and filed her petition seeking a distributive share of the estate, as provided in Title 84, sec. 132, O. S. 1941. She pleaded that she was a daughter of Wesley Asbury and Louila Asbury, and was born on February 3, 1920. Spaniard et al. v. Tantom et al.,131 Okla. 75, 267 P. 623; Riley et al. v. Collier et al., 111 Okla. 130,238 P. 491; and Courtney et al. v. Daniel et al., 124 Okla. 46,253 P. 990.
Wesley Asbury's will devised to Lowina Asbury, his second wife, 80 acres of his allotment and bequeathed to her his personal property; it devised to his three sisters the remaining 80 acres of his allotment, and failed to provide or mention the claimant, Annie Asbury.
The claim of Annie Asbury was denied under a finding that she was not the child of the deceased testator, Wesley Asbury. Annie Asbury appealed to the district court, where a like finding and judgment was entered, and she has perfected her appeal to this court.
The cause was revived in the district court as to the widow, Lowina Asbury, who died in February, 1940, and it was revived in this court as to Mary McQueen, who died September 10, 1942.
The sole question involved is whether plaintiff is the child of Wesley Asbury, the deceased testator. Wesley Asbury and Louila King entered into a ceremonial marriage on May 5, 1919. A license issued and returned showed that fact beyond doubt. After the marriage, Wesley Asbury and his wife lived together at the home of Nellie White for one week and then moved to another home, where they cohabited for a time, the duration of which is in dispute, varying, according to the testimony, *Page 441 
as much as five months. The positive evidence is that the child, Annie Asbury, was born February 3, 1920; and while there are in evidence circumstances tending to prove that she might have been born at an earlier date, the preponderance of testimony supports the positive evidence. Her mother so testified, as did her maternal grandfather, Peter King. Annie Asbury testified that she had always been told that was the date of her birth. There being no substantial evidence to the contrary, it must be taken as conclusively established that such was the date of her birth. Accepting that as the date of her birth, it was 274 days after the date of the marriage heretofore stated and within six days of the generally accepted period of gestation, 280 days. Webster's New International Dictionary; State ex rel. Bentley v. Frenger, 158 Wn. 683,291 P. 1089.
On March 3, 1920, Wesley Asbury filed in the district court of Hughes county a petition for divorce against Louila Asbury, and on January 10, 1921, he was granted an uncontested decree of divorce based upon the ground that Louila was pregnant by another man at the time of marriage. Several witnesses testified that they talked with Louila shortly before and after her marriage; that at the time of the marriage she showed to be about four months advanced in pregnancy; that she admitted she was pregnant by a man other than Wesley Asbury; but all of this evidence was positively denied by Louila; and such evidence is inherently improbable and of necessity must be taken as untrue in view of the positive evidence that Annie Asbury was born to Louila February 3, 1920. The unreliability of this evidence is shown by the testimony of Mandy Narcomey, who testified that at the time of the marriage she was the wife of Peter King, and that Louila had lived in the home with her and her husband before and after her marriage. On cross-examination, Mandy Narcomey testified that she was separated and divorced from Peter King 23 years before the date of trial, Which would have been May 1, 1918, more than a year prior to the date Louila was married to Wesley Asbury. As a consequence, she would not have been present and living in the home of Peter King according to the testimony she gave in direct examination.
Title 10, sec. 1, O. S. 1941, provides:
"All children born in wedlock are presumed to be legitimate."
The marriage heretofore considered was not dissolved until long after the birth of Annie Asbury. Consequently she was born in lawful wedlock. The authorities are not in harmony with regard to the proof necessary to rebut the presumption of legitimacy attributed to a child born in lawful wedlock. It is said in 7 Am. Juris. 656, par. 45, that:
". . . The declarations of a husband that a child born in wedlock is not his are not sufficient to prove its illegitimacy, notwithstanding it was born only three months after the marriage and a separation between his wife and himself . . ."
In Bowles v. Bingham (Va.) 2 Munf. 442, 5 Am. Dec. 497, it is said that where a distributive share of a putative father's estate had been denied an infant on the ground that she was not his child, and articles of separation agreement had been introduced and it was shown that the child's birth occurred three months after marriage between her mother and a putative father, the child ". . . may be considered as having been begotten as well as born during wedlock," and the declarations on the part of the father "may have been induced either by a feverish and unwarrantable jealousy on his part, by a belief of a simultaneous and concurrent access on the part of other men, or by other circumstances equally uncertain and equivocal."
Likewise it was said:
"With respect to procreations during marriage the presumption is, that all persons born during marriage are legitimate. This presumption can be destroyed only by contrary proof, demonstrating *Page 442 
that the child is not the child of the husband; which again can only be by showing that from his continued absence from his wife, at or about the time of procreation, or from the impotency of his body, it is impossible that he should be the father."
It was there stated that even in the case of a divorce, as herein established, the degree of proof to establish legitimacy of such a child "only tolerates an inquiry going to show that the husband could by no possibility have been the father of the child, it will certainly not relax the rule in relation to a procreation before the marriage, to cases in which the husband has entered into a matrimonial engagement with his wife, not only with full knowledge of the rule aforesaid, but also (in general) with a knowledge of her particular situation in relation to her pregnancy or otherwise. Our law wisely throws a veil over acts of incontinency in such cases, and certainly will not, without necessity, and in a spirit of departure from the wise rule of public economy before mentioned, inundate our courts with indecent inquiries, whether this or that man, whether husband or another, committed a given act of immorality and fornication."
Therein it was held that the evidence, such as in the instant case, did not repel possibility of the infant having been begotten by the putative father and so the child was held to be legitimate and entitled to a distributive share of her father's estate.
In Jackson v. Jackson et al., 182 Okla. 74, 76 P.2d 1062, it was held that where a husband and wife cohabited during a period of possible conception, the presumption of legitimacy of a child conceived during such period was indulged and it was held that such presumption could be overcome only by evidence that was strong and satisfactory.
The uncontradicted evidence in the case at bar establishes a cohabitation between husband and wife, affording an opportunity and probability of conception of Annie Asbury during that period. Therefore, to overcome the presumption of her legitimacy, the evidence must be strong and convincing. There is no such proof contained in this record.
In Bentley v. Frenger, 158 Wn. 683, 291 P. 1089, such a presumption was indulged to establish the paternity of a child, and in Wright, Adm'r, v. Hicks, 15 Ga. 160, it was said that:
"Nothing short of impossibility in such case should impugn the legitimacy of the offspring."
The appellant contends that under Title 10, sec. 3, O. S. 1941, appellees will not be heard to dispute her legitimacy by reason of the provision that "the presumption of legitimacy can be disputed only by husband or wife or the descendant of one or both of them." But in view of the conclusion we have reached, we deem it unnecessary to discuss that matter. The evidence adduced is wholly insufficient to overcome the presumption that plaintiff is the child of Wesley Asbury, deceased testator.
Judgment reversed, with directions to enter judgment in favor of plaintiff.
CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, BAYLESS, and HURST, JJ., concur. WELCH, DAVISON, and ARNOLD, JJ., dissent.